389 So.2d 1271 (1980)
STATE of Louisiana
v.
James R. LANGENDORFER.
No. 67035.
Supreme Court of Louisiana.
October 6, 1980.
Rehearing Denied November 10, 1980.
*1273 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., for plaintiff-appellee.
Howard M. Fish, Shreveport, for defendant-appellant.
WATSON, Justice.
Defendant, James R. Langendorfer, was indicted for aggravated rape and aggravated crime against nature contrary to LSA-R.S. 14:42 and LSA-R.S. 14:89.1 because of an alleged attack on Amy F. Williams. A jury voted 10 to 2 to convict of simple crime against nature and 11 to 1 to convict of forcible rape. A multiple offender hearing established that defendant had been convicted in the State of California of assault with intent to commit rape and sentenced to an indeterminate term of one to twenty years. Langendorfer was found to be a multiple offender and sentenced to sixty years for the forcible rape and five years for the simple crime against nature, to run concurrently. Langendorfer has appealed, relying on seventeen of thirty-two assignments of error, grouped into fourteen arguments.
Amy Flynn Williams, a small woman weighing about ninety pounds, was a sales person at the T-Shirt Plus Shop in Shreve City, Caddo Parish, on January 19, 1979. Since separated, she was then married and living with her husband. Defendant Langendorfer came in that afternoon about 2:00 P.M. and represented that he was a lighting fixture salesman. He remained about a hour and then left, returning about 4:00 or 4:30 in the afternoon. The two visited. Amy Williams went into the back room to smoke a cigarette and Langendorfer accompanied her, bringing a beer from his car. Her mother, Dell S. Flynn, came by for a few minutes to discuss a birthday dinner for Amy's father. As Amy Williams was getting ready to close the store at 6:00 P.M., vacuuming and sweeping up, Langendorfer started strangling her. He then ordered her to take off her clothes. Some people came into the outer part of the store at this point. Langendorfer indicated he had a knife in his pocket, and told Amy to stay where she was while he went and attended to the customers. He then locked the door to the back room and required her to perform fellatio before raping her. Langendorfer left but returned to give Amy $20 to buy a birthday present for her father. She then discovered that all the money in the cash register and $110 from her purse were missing. Amy Williams called her boss, the police, her parents and her husband but did not tell the police about the rape until she went to the station. Amy Williams had a lump on her head, torn clothing and bruises on her throat. Hospital tests indicated recent sexual intercourse, but Amy testified that it had been over three weeks since she had had intercourse with her husband. Both Amy Williams and her mother identified Langendorfer. James Langendorfer admitted in a statement that he had been present in the store and had slapped Amy Williams. He also admitted telling her to take off her clothes and that she did so while he told the customers outside that the store was closed for the day. He denied any intercourse or oral sex.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant contends that the indictment charging aggravated crime against nature, LSA-R.S. 14:89.1, as defined by LSA-R.S. 14:89, should have been quashed.
Langendorfer was indicted for aggravated crime against nature. However, the aggravated charge is dependent on the other for definition. Counsel contends that LSA-R.S. 14:89, which defines crime against nature as "unnatural carnal copulation" involving "the genital organ" is unconstitutionally vague. State v. Phillips, 365 So.2d 1304 (La., 1978) held that the *1274 statutory terms "... have acquired historically and jurisprudentially a definite meaning." 365 So.2d 1306.
Defendant also contends that, since he was convicted of simple crime against nature, the oral sex which occurred was found by the jury to be consensual. There was testimony by Dr. Abraham Flemenbaum that consensual oral-genital sex is completely normal. Defendant contends that the statutory prohibition against oral sex is an unconstitutional invasion of privacy, citing People v. Onofre, 72 A.D.2d 268, 424 N.Y.S.2d 566 (1980) and LSA-Const., Art. 1, § 5.
It is unnecessary to consider what the disposition of this argument would be in a truly consensual case. Langendorfer was charged with aggravated crime against nature. The evidence fully supports the charge. Even though the jury exercised its discretion to return a lesser verdict, this does not affect the validity of the indictment. The trial court was correct in refusing to quash the indictment.
This assignment of error lacks merit.

ASSIGNMENTS OF ERROR NUMBER THREE, FOUR AND FIVE
There is no merit to the two arguments presented in these assignments.

ASSIGNMENT OF ERROR NUMBER SIX
It is contended that the verdicts on the two charges are invalid because not unanimous. This assignment lacks merit. State v. Jones, 381 So.2d 416 (La., 1980); Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972); Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972).

ASSIGNMENT OF ERROR NUMBER EIGHT
The defense undertook to question prospective jurors about their support for District Attorney Paul Carmouche. Carmouche took office on January 1, 1979, and this was the first case he tried personally. The trial court limited questioning to whether prospective jurors had been actively involved in the campaign. This was sufficient to identify those with a predisposition toward the State. There was no abuse of discretion. State v. Murray, 375 So.2d 80 (La., 1979). This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TEN
A kit distributed to coroners and doctors was identified as "a rape kit". It is contended that use of this phrase at trial was prejudicial. This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER SIXTEEN
The State questioned Amy Williams about the last time she had sexual intercourse with her husband before the rape. It is contended that this was evidence of prior sexual conduct in violation of R.S. 15:498.
LSA-R.S. 15:498[1] is intended to prevent rape victims from being attacked and impeached on the irrelevant issue of general unchastity.[2] The statute is contained in Part X of Chapter 2, "Impeaching and Corroborative Evidence". Only evidence of prior sexual conduct which impeaches a victim's general "reputation for chastity" is excluded by the statute. Any sexual relations between Amy Williams and her husband would not fall in this category and are not within the purview of the statute.
The Coroner, Dr. Robert E. Braswell, said he could not identify the sperm in Amy Williams as defendant's. Defense counsel admitted that he intended to argue that the sperm might have come from the spouse. The testimony was proper to rebut this *1275 possibility. The evidence related to proof of the crime and not "reputation". This assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER SEVENTEEN
It is contended that a mistrial should have been granted after the prosecutor elicited testimony that one of the doctors Ms. Williams had seen between the rape and the trial was a psychiatrist, Dr. Marceau. It is contended that this evidence was inflammatory and irrelevant. The trial judge stated that there was no prejudice from the one question posed and denied the mistrial.
The State was not allowed to explore the issue. The trial court indicated agreement with defense counsel's objection, and the line of questioning was dropped. Any prejudice was insufficient to warrant a mistrial. LSA-C.Cr.P. art. 771.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NUMBER NINETEEN
After the victim's mother testified, one of the jurors, Ms. Pauline R. Overdyke, realized that she had taught Amy Williams in elementary school. Ms. Overdyke could not recognize Amy herself and remembered her only as a quiet child. It is contended that a mistrial should have been granted.
Ms. Overdyke did not intentionally mislead the defendant. Questioning by the court showed that she could serve without bias as a fair and impartial juror. There was no error in denial of a mistrial. See State v. Daniel, 378 So.2d 1361 (La., 1979).
This assignment of error lacks merit.

ASSIGNMENTS OF ERROR NUMBER TWENTY-FIVE, TWENTY-SIX AND TWENTY-SEVEN
It is contended that the California crime of which Langendorfer was convicted is analogous to the Louisiana misdemeanor of simple assault and that the evidence was insufficient to prove that the crime "... if committed in this state would be a felony," LSA-R.S. 15:529.1.
The California records show that Langendorfer was imprisoned on May 10, 1973, and paroled on August 13, 1976. Caddo Parish District Attorney Paul Carmouche testified from California documents in evidence that Langendorfer was convicted in California of a violation of Section 220 of the California Penal Code, assault to commit rape, which is defined as follows:
"Every person who assaults another with intent to commit rape, infamous crime against nature, mahem, (sic) robbery or grand larceny is punishable by imprisonment in the State prison for not less that (sic) one year and not more than twenty years." (Tr., Vol. 4, p. 20)
District Attorney Carmouche also testified that a felony in California is a crime punishable by imprisonment in the state prison and that in Louisiana a felony is a crime punishable at hard labor which means, in effect, imprisonment in the state penitentiary.
The California crime to which Langendorfer pled guilty in 1973 was the equivalent of attempted forcible rape in Louisiana. The crime would have been a felony if committed in Louisiana.
There is no merit to these assignments of error.

ASSIGNMENT OF ERROR NUMBER TWENTY-EIGHT
There were two multiple offender hearings. At the first, the trial court ruled that defendant was not a multiple offender because the State failed to make an affirmative showing that his guilty plea in California was obtained with a proper waiver of rights under Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). This court granted the State's writ and ordered a new sentencing, citing State v. Holden, 375 So.2d 1372 (La., 1979).
The trial court did not err in following this court's mandate at the second hearing and placing the burden of proof on defendant.
This assignment of error lacks merit.

*1276 ASSIGNMENT OF ERROR NUMBER TWENTY-NINE
Defendant contends that his California conviction should not have been used to enhance his sentence because he was not properly advised of his rights at the time of the guilty plea according to Boykin v. Alabama, supra. Langendorfer pled guilty in California to two charges, one being:
"a violation of 220 of the Penal Code in that in the County of Riverside, State of California, you did willfully (sic) and unlawfully make an assault on Gail D. Vasily, a female person not then and there the wife of the said James Langendorfer, with the intent then and there by force and violence to have and accomplish an act of sexual intercourse with and upon the said Gail D. Vasily."
Langendorfer and his attorney were advised by the court that his plea bargain did not include any stipulation about punishment. Langendorfer, accompanied by counsel, was then instructed of his rights as follows:
"THE COURT: ... you have the right to a speedy trial by jury and you have the right to a lawyer at all stages, to be confronted by witnesses against you at your trial. You have the right to present evidence on your behalf in defense of these charges and you have the process of the Court which is available to compel the witnesses to appear on your behalf and you have the privilege against self incrimination. Do you know what the privilege against self incrimination is?
"THE DEFENDANT: Yes I do.
"THE COURT: You realize by pleading guilty to each charge you give up the right of a jury trial.
"THE DEFENDANT: Yes.
"THE COURT: You waive your right to a jury trial?
"THE DEFENDANT: Yes.
"THE COURT: You realize you are giving up your rights to be confronted by witnesses against you.
"THE DEFENDANT: Yes.
"THE COURT: Do you waive your right to be confronted by witnesses against you?
"THE DEFENDANT: Yes.
"THE COURT: You know you have a right to remain silent at the trials that require the prosecution to prove their case against you beyond reasonable doubt?
"THE DEFENDANT: Yes.
"THE COURT: You realize you give up that right and admit the commission of the crime charged in each case?
"THE DEFENDANT: Yes.
"THE COURT: Do you give that up?
"THE DEFENDANT: Yes.
"THE COURT: And you understand what the charge in each case is against you?
"THE DEFENDANT: Yes.
"THE COURT: And you realize they are each a felony?
"THE DEFENDANT: Yes.
"THE COURT: And you realize in regard to an assault with intent to commit rape you could be committed from one to two years in State's prison?
"THE DEFENDANT: Yes."
Langendorfer testified that he believed his maximum sentence was two years and only learned afterwards that he had been sentenced to from one to twenty years. The "two" should have been twenty. However, this error, either an inadvertent slip of the tongue by the judge or a failure in transcription, does not invalidate the plea.
Langendorfer was advised that he was waiving his privilege against compulsory self-incrimination; the right to trial by jury, and the right to confront his accusers. Langendorfer was represented by counsel and entered his plea knowingly and voluntarily. The requirements of Boykin v. Alabama, supra, were met.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NUMBER THIRTY
It is contended that the second multiple offender hearing placed defendant twice in jeopardy as a multiple offender. However, a multiple offender proceeding is *1277 not the trial of a criminal charge. Such a proceeding is merely part of sentencing and allows enhanced penalties for repeat offenders. A second multiple offender hearing does not involve double jeopardy. State v. Jackson, 298 So.2d 777 (La., 1974); State v. Montana, 332 So.2d 248 (La., 1976); State v. Alexander, 325 So.2d 777 (La., 1976); State v. Sanders, 337 So.2d 1131 (La., 1976).
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER THIRTY-TWO
Defendant contends that the trial court erred in failing to provide defendant with a copy of the victim's statement to police.
The trial court made an in camera inspection of the statement to determine if any exculpatory material was present and stated that the following aspects might be regarded as exculpatory: that Amy Williams did not see a weapon; that Langendorfer was drinking a beer; and that Langendorfer gave Amy Williams $20 after the attack took place.
In her statement, Amy Williams said the defendant:
"... talked about girls he had dated and uh talked about sex and . . .".
It is contended that this information was also exculpatory and relevant to the issue of consent; that it might have created a reasonable doubt in the collective mind of the jury.
At trial, Amy Williams testified that she and Langendorfer, also married, discussed the problems of marriage, particularly her marriage and "different things in general." (Tr. 129) It was clear to the jury that the two had a fairly lengthy and detailed chat. The mere fact that Langendorfer talked about sex during the discussion does not imply a consent to sexual relations by his listener. In view of the condition of Amy Williams and her clothes after the rape, the jury could not reasonably have believed that she had consented to the act.
Although the trial court may have erred in not revealing the statement or more of its content to the defense, the omission did not deny defendant a fair trial. The evidence does not raise "... a legitimate doubt on the issue of guilt." United States v. Aqurs, 96 S.Ct. 2392, at 2400, 427 U.S. 97, at 109, 49 L.Ed.2d 342 (1976).
This assignment of error lacks merit.
For the foregoing reasons, the conviction and sentence of James R. Langendorfer are affirmed.
AFFIRMED.
NOTES
[1] LSA-R.S. 15:498 provides:

"Victims of rape and carnal knowledge; Impeachment
"Evidence of prior sexual conduct and reputation for chastity of a victim of rape or carnal knowledge shall not be admissible except for incidents arising out of the victim's relationship with the accused."
[2] See 40 La.L.R. 268 for an excellent discussion of the statutory purpose.