PONDER, Judge.
Daniel McClinton was charged by indictment with aggravated rape and aggravated burglary, in violation of R.S. 14:42 and R.S. 14:60. He pled not guilty and not guilty by reason of insanity. A jury found defendant guilty as charged on both counts. Defendant received a mandatory sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence for the aggravated rape conviction and a sentence of ten years at hard labor, to run concurrently with the life sentence, on the aggravated burglary conviction. Defendant has appealed, arguing twelve assignments of error.[1]
In the early morning hours of January 6, 1984, Daniel McClinton entered an apartment in Baton Rouge, Louisiana, and raped a sixteen year old girl at knifepoint. Defendant gained access to the apartment by bending a window screen and climbing through an open window without awakening the victim’s mother and stepfather, who were sleeping in the room. Defendant armed himself with a kitchen knife and entered the bedroom where the victim was asleep. Defendant turned on the light, woke the victim, and ordered her to disrobe. He then removed his clothes and forced the victim to submit to sexual intercourse.
After raping the victim, defendant re-entered the bedroom where the mother and stepfather were sleeping. This time they were awakened by his presence. Defendant threatened them with the knife and then retreated into the hallway and escaped through the front door. The victim informed her mother and stepfather that she had been raped and then collapsed. Her mother called the police, who arrived within minutes.
Officer Brown, one of the police officers responding to this call, observed a black male burning something in the parking lot *164 of an apartment complex a few blocks from the victim’s apartment. After observing defendant for several minutes. Officer Brown approached defendant and asked for identification. At this point, he observed that defendant fit the description of the rapist which was given to police officers at the scene by the victim and her mother. When Officer Brown noticed defendant had been burning a pair of men’s underwear, he placed defendant under arrest. A search of defendant produced two wallets, one of which belonged to the victim’s stepfather. The police also discovered several items taken from the victim’s apartment, including a kitchen knife, a coin box, and some frozen meat, in defendant’s car. The police officers returned to the victim’s apartment with defendant, who was immediately identified by the victim, her mother, and her stepfather. Subsequently, they also identified the items found in defendant’s car.
ASSIGNMENTS OF ERROR NUMBERS 2-A AND 12:
Defendant contends the trial court erred in overruling his objections to the State’s exercise of peremptory challenges to exclude prospective black jurors and in denying his supplemental motion for new trial on this basis. Defendant argues that the practice resulted in a denial of his right to a trial by a jury of his peers.
Although the record does not reflect the race of all of the prospective jurors, defendant states that out of thirty-three people called as prospective jurors, twelve were black. Defendant also contends the State exercised all of its peremptory challenges against blacks. The record does not indicate the number of prospective black jurors accepted by the State, although defendant conceded during oral arguments that there were two black jurors on the final jury panel. Finally, the record does not indicate whether any prospective black jurors were challenged by the defense.
Under the law in effect at the time of defendant’s trial, a defendant was not denied equal protection when the State exercised its peremptory challenges to exclude prospective black jurors in a particular case unless there has been a systematic exclusion of blacks over a period of time. Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); State v. Williams, 458 So.2d 1315, 1331 (La.App. 1st Cir.1984), writ denied, 463 So.2d 1317 (La.1985). The burden was on the defendant to make a prima facie showing of such systematic exclusion before the State was required to show the exercise of its peremptory challenges was not discriminatory. State v. Williams, supra. Defendant has not met this burden. He merely contends all of the State’s peremptory challenges in this particular case were used to exclude prospective black jurors.
In his brief, defendant argues that a showing of systematic exclusion of prospective black jurors over a period of time was not the only way to demonstrate that the prosecution’s use of peremptory challenges has resulted in a denial of the defendant’s right to a fair trial. We disagree that this was the law at the time of defendant’s trial. Defendant has failed to show a pattern of systematic exclusion of prospective black jurors over a period of time.
This assignment of error is without merit.[2]
ASSIGNMENT OF ERROR NUMBER THREE:
Defendant argues the trial court erred in refusing to permit him to question the victim as to the last time she engaged *165 in sexual intercourse prior to the alleged rape. Evidence of a victim’s prior sexual conduct is not admissible except for incidents arising out of the victim’s relationship with the accused. La.R.S. 15:498. However, defendant relies on State v. Langendorfer, 389 So.2d 1271 (La.1980), to make permissible his question to establish the possibility the sperm found on the victim’s bedsheets was that of her boyfriend. The Langendorfer Court permitted the testimony to rebut the defense’s argument that the sperm retrieved from the victim was that of her husband. In any event, the present victim’s other testimony ruled out any possibility the sperm could be attributed to her boyfriend. She testified she put clean sheets on her bed before going to sleep. Therefore, it is apparent the seminal fluid found on the sheet could not be attributed to her boyfriend.
The trial court’s ruling was not an abuse of discretion. See State v. Miller, 449 So.2d 1361 (La.App. 1st Cir.1984), writ denied, 450 So.2d 965 (La.1984).
This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER FOUR:
Defendant argues the trial court erred in sustaining the prosecution’s objection to testimony by defendant’s sister regarding defendant’s behavior subsequent to the alleged rape. After the State’s objection was sustained, defense counsel made no attempt to explain what the testimony of defendant’s sister would have consisted of nor why testimony related to incidents occurring after the alleged rape would be relevant to the issue of defendant’s sanity at the time of the crimes.
The defendant has the burden of establishing the defense of insanity at the time of the offense by a preponderance of the evidence. La.Code Crim.Pro. art. 652. A non-expert witness, basing his testimony on facts and circumstances personally known to him, may give opinion testimony of the defendant’s mental condition, provided the witness is shown to have had ample opportunity to observe his speech, manner, habits, and conduct. State v. Murray, 375 So.2d 80 (La.1979). The trial court’s determination of the relevancy of such testimony is within the discretion of the trial court and will not be disturbed absent a clear abuse of discretion. See State v. Pettaway, 450 So.2d 1345, 1365 (La.App. 2d Cir.), writ denied, 456 So.2d 171 (La.1984).
Defense counsel established a proper foundation for questioning defendant’s sister about defendant’s mental condition during the period in which they lived in the same household, but failed to lay a proper foundation to establish she had had ample opportunity to observe defendant’s speech, manner, habits, and conduct during the period after the alleged rape. State v. Murray, supra. In any event, in light of other evidence admitted on the issue of defendant’s sanity at the time of the offense, the trial court’s ruling in no way prejudiced defendant. Defense counsel was able to elicit proper testimony about defendant’s mental state from two expert witnesses who examined him after the rape occurred. See State v. Pettaway, supra.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER FIVE:
Defendant argues the trial court erred in refusing to give his requested special jury charge number three, which provided:
A person is legally insane if his mind is so impaired or deranged, whether from nature or by accident or disease, as to render him incapable of planning and acting, or of having knowledge of the nature and quality of the act he is doing, incapable of realizing his responsibility to society and to others, in sum, incapable of distinguishing between right and wrong.
The trial court should give a requested charge which does not require qualification, limitation, or explanation and is not included in the general charge or in another special charge to be given, if it is wholly correct and pertinent to the case. La.Code *166 Crim.Pro. art. 807; State v. Kirkley, 470 So.2d 1001 (La.App. 1st Cir.), writ denied, 475 So.2d 1105 (La.1985), cert. denied, — U.S. —, 106 S.Ct. 808, 88 L.Ed.2d 783 (1986).
The record reflects that the trial court’s general charge to the jury regarding insanity provided:
Insanity at the time of the commission of a crime exempts the offender from criminal responsibility. If the circumstances indicate that because of a mental disease or a mental defect the defendant was incapable from distinguishing between right and wrong with reference to the conduct in question, the defendant must be found not guilty by reason of insanity.
The trial court’s refusal to give defendant’s requested special jury charge was proper, since it was already covered in the court’s general charge. Furthermore, the defendant’s requested jury charge was not completely correct since it did not include the important concept that the mental disease or defect which constitutes insanity must be present at the time the offense is committed.
The assignment of error is without merit. ASSIGNMENT OF ERROR NUMBER EIGHT:
Defendant contends the trial court erred in failing to order disclosure of a recorded statement made by the rape victim.
During trial it was revealed the victim had made a tape recorded statement to police officers shortly after the rape. The statement was not entered into evidence. Following trial defendant filed a motion for access to the statement. After an in camera inspection, the trial court concluded disclosure of the statement was not necessary because it was not exculpatory.
The prosecution must disclose any evidence favorable to the defendant, if such evidence is material to the issue of guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). However, there is no constitutional requirement that the prosecution make a complete accounting to the defense of all police investigatory work on a case. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The Louisiana Supreme Court has consistently held the State need not open its files to the accused and allow him to search them and decide what is exculpatory. State v. Robinson, 342 So.2d 183 (La.1977). In Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the Court ruled that when the “reliability of a given witness may well be determinative of guilt or innocence,” Brady requires disclosure by the State of evidence affecting that witness’ credibility. Upon receiving a request for such material, the prosecution must either disclose it to the defense or allow the trial court to make an in camera inspection of the material. United States v. Agurs, supra; State v. Cobb, 419 So.2d 1237 (La.1982).
Defendant’s argument that the victim’s statement contained exculpatory evidence was based on an apparent inconsistency which occurred in her testimony on cross-examination:
Q. What I need to ask you, Ms. [Victim], is have you ever told one of your friends and one of the people who investigated this case that that’s not the way it happened; that you didn’t engage in formal sex but that y’all engaged in oral sex?
A. No.
Q. Ma’am?
A. No, sir.
Q. Isn’t that what happened; y’all engaged in oral sex?
A. No, sir.
Q. Do you know what oral sex is?
A. (There was no response made by the witness to defense counsel’s question.)
Q. Isn’t that what happened, Ms. [Victim], keeping in mind that you’re under oath, swearing to tell the truth, before God? Isn’t that what happened, Ms. [Victim]?
A. Yes.
*167 Q. Ma’am? Isn’t that what happened?
A. Yes.
Q. And there was no formal sex, was there? He didn’t put his penis in your vagina, did he?
A. Yes, sir, he did.
The apparent inconsistency resulted from the victim’s confusion as to which question was being asked by defense counsel. There being no other basis to support defendant’s argument the tape contained exculpatory evidence or evidence affecting the victim’s credibility, particularly in view of the trial court’s in camera inspection, we reject this argument.
Defendant further argues the trial court erred in not including the victim’s taped statement in the record for this court’s review. Although a trial court should make a reviewable record of items it inspects in camera, we do not find this failure constituted reversible error in this case. See State v. Oliver, 430 So.2d 650 (La.1983), cert. denied, 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983). We also note defendant failed to request that the statement be made part of the record, but merely requested he be allowed to examine it himself.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER NINE:
Defendant argues the trial court erred in denying his motion for post-verdict judgment of acquittal. Relying primarily on the testimony elicited from his two expert witnesses, defendant argues he met the burden of proving he was insane at the time of the commission of this offense.
In reviewing claims of insufficiency of evidence in regard to the insanity defense, the test is whether any rational factfinder, viewing the evidence in the light most favorable to the prosecution, could find beyond a reasonable doubt that the defendant failed to present a preponderance of proof in support of the defense. State v. Price, 403 So.2d 660 (La.1981); State v. Richardson, 444 So.2d 654 (La.App. 1st Cir.1983), writ denied 446 So.2d 313 (La.1984).
Defendant was diagnosed by Dr. Nem-eth, a psychologist, as a paranoid/schizophrenic. Dr. Cenac, a psychih-trist, diagnosed defendant as being chemically dependent, schizophrenic, and psychotic. However, Dr. Cenac further testified many people who are psychotic are not legally insane.
In any event, the relevant inquiry in this appeal is whether defendant was legally insane at the time the offense was committed. La.R.S. 14:14. Both Dr. Nemeth and Dr. Cenac acknowledged they could not determine defendant’s mental condition with any certainty at the time he committed the offense. When the prosecutor proposed a hypothetical question to Dr. Cenac which essentially tracked the facts of this case, Dr. Cenac indicated a person acting in such a manner was capable of distinguishing between right and wrong. In addition, when apprehended defendant was burning his underwear in an apparent attempt to destroy damaging evidence, indicating an awareness of right and wrong.
We find a rational jury could conclude beyond a reasonable doubt that defendant failed to prove his insanity defense by a preponderance of the evidence.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER TEN:
Defendant argues the trial court erred in denying his supplemental motion for exculpatory evidence, in which defendant sought the identity of the doctor who examined the victim and prepared a rape kit, as well as any notes or reports prepared by him.
In opposition to defendant’s motion the State indicated the doctor’s notes were included in the rape kit, which was referred to in the State crime lab report provided to defendant and which was available for inspection. Defense counsel had access to the notes prepared by the doctor and could have reviewed them before trial if he had *168 exercised due diligence. Further, upon learning a doctor had examined the victim, defense counsel could have requested a recess and attempted to subpoena the doctor. See State v. Arnaud, 412 So.2d 1013, 1016 (La.1982). The record gives no indication defendant was surprised to learn a doctor had examined the rape victim.
The defendant argues the doctor’s testimony as to the findings of his examination could have been crucial in proving no penetration occurred. We agree with the trial court that any testimony by the doctor “could have done nothing more than corroborate the evidence that was contained in the findings included in the rape kit”, and could not have excluded the possibility of penetration with any degree of certainty.
The assignment of error is without merit. ASSIGNMENT OF ERROR NUMBER FOURTEEN:
Defendant argues the trial court erred in not granting his discovery motion for disclosure of the victims’ addresses.
A defendant is not usually entitled to the names of state witnesses. State v. Lane, 414 So.2d 1223 (La.1982). Although a trial court does have discretionary authority to order such a disclosure, this is normally done only if favorable to the defendant and relevant to the issues of guilt or punishment. See, La.C.Cr.Pro. arts. 718 and 723; State v. Felde, 422 So.2d 370, 383 (La.1982) cert. denied, 461 U.S. 918, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983). Rulings on such issues are accorded great deference and will not be disturbed absent a clear showing of abuse of discretion. State v. Walters, 408 So.2d 1337 (La.1982).
Since defendant has made no showing that the victims possessed any exculpatory information we find no abuse of the trial court’s discretion.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER ELEVEN:
Defendant argues the trial court erred in denying his motion for new trial.
Defendant’s motion was based on the following three grounds: 1) the trial court’s refusal to permit testimony by defendant’s sister regarding defendant’s conduct subsequent to the rape; 2) the trial court’s failure to order disclosure of the victims’ addresses; and 3) prejudicial publicity concerning the alleged “Serpent Man Rapist” which occurred shortly before and during defendant’s trial. The first two grounds have been considered and rejected in assignments of error numbers four and fourteen, respectively. We likewise find no merit in the third ground.
Defendant argues publicity concerning the Serpent Man, who was purported to be a black man who viciously attacked white women, made it impossible for defendant to receive a fair trial because the jurors had been prejudiced against blacks. While the alleged Serpent Man rapist received extensive news coverage in the period immediately before and during the defendant’s trial, we do not accept defendant’s contention the jurors in the instant case might have confused defendant with the Serpent Man or been prejudiced against him because of the crimes allegedly committed by Serpent Man.[3] During voir dire all of the jurors, with the exception of one who was excused for cause, indicated they knew nothing about defendant or the particular crime in question and that they could give defendant a fair trial. Additionally, the jury which consisted of both blacks and whites, unanimously convicted defendant of aggravated burglary and voted eleven to one in favor of conviction on the aggravated rape charge.
*169 We are unable to say defendant did not receive a fair trial. The trial court did not abuse its broad discretion in denying defendant’s motion for new trial.
This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER THIRTEEN:
Defendant contends the trial court erred in denying his second supplemental motion for new trial in which he contended that the cumulative effect of all of the errors before, during, and after trial denied his right to a fair trial. The errors alleged in defendant’s respective motions have been considered in previous assignments of error and found to be without merit. Accordingly, we find no merit in this assignment of error.
ASSIGNMENT OF ERROR NUMBER FIFTEEN:
Defendant argues the trial court erred in granting the State’s motion for discovery.
Several months after defendant’s motion for discovery was answered by the State, the State filed its own motion for discovery. At the hearing defendant argued the State’s motion was untimely and should have been filed contemporaneously with the defendant’s own discovery motion. Defendant argues he was prejudiced by the delay in the filing of the State’s motion because, had he known the State would request discovery, he might have withdrawn his own motion.
The Code of Criminal Procedure provides the prosecution with the opportunity for discovery only if the defendant has first been granted discovery. La.Code Crim. Pro. arts. 724 and 725. Defendant’s specific complaint is that the prosecution was able to discover that defendant intended to introduce expert testimony relating to his mental condition.
There is no requirement for the contemporaneous filing of a discovery motion by the State. The code articles on discovery merely provide that the prosecution is entitled to discovery only in instances when the defendant has first been granted discovery. La.Code Crim.Pro. arts. 724 and 725. Since the defendant was granted discovery, the trial court did not err in granting the State’s motion for discovery.
This assignment of error is without merit.
CONVICTIONS AND SENTENCES AFFIRMED.

. Assignments of error numbers one, two, six, seven, and sixteen were not briefed on appeal and are, therefore, considered abandoned. Uniform Rules — Courts of Appeal — Rule 2-12.4.

. We note the United States Supreme Court has recently rendered a decision effectively overruling Swain v. State of Alabama, supra, by changing the defendant’s burden of proof regarding objections to the State’s use of peremptory challenges to exclude blacks on voir dire. See, Batson v. Kentucky, — U.S. —, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Although the Batson majority opinion does not address the issue of retroactive application of its holdings, two concurrences by Justices White and O’Conner, respectively, and a dissent by Justice White indicate that the Batson holding is not to be given retroactive application. Additionally, on May 30, 1986 the Louisiana Supreme Court, in denying a rehearing in State v. Ford, 489 So.2d 1250 (La.1986), stated Batson was not applicable to cases tried before it was handed down.

. We note defense counsel did not raise any issue as to prejudicial publicity either before or during trial, contending he was unaware of it until after the trial concluded. We further note prejudice against an accused because of news coverage is normally a ground for change of venue, but not for a new trial. However, we pretermit consideration of these issues in view of our finding that defendant has not shown he suffered any prejudice as a result of the Serpent Man publicity.