CRAIN, Judge.
Daniel McClinton was charged by indictment with aggravated rape and aggravated burglary, violations of La.R.S. 14:42 and 14:60 respectively. He pled not guilty and not guilty by reason of insanity. A jury found defendant guilty as charged on both counts. Defendant received a mandatory sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence for the aggravated rape conviction and a sentence of ten years at hard labor, to run concurrently with the life sentence, for the aggravated burglary conviction. On appeal, this Court affirmed defendant’s convictions and sentences. See State v. McClinton, 492 So.2d 162 (La.App. 1st Cir.1986). Thereafter, defendant applied for supervisory writs to the Louisiana Supreme Court which granted the application for the purpose of remanding the case to the trial court for a hearing “as required by Batson v. Kentucky, [476] U.S. [79], 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).” See State v. McClinton, 502 So.2d 1092 (La.1987). The trial court conducted a hearing and ruled that defendant failed to prove, in accordance with Batson, that there was purposeful discrimination in this case through the state’s exercise of its peremptory challenges to exclude from the jury members of defendant’s race.
The record of the Batson hearing reflects that, at the behest of the state, the individuals comprising the twelve person jury which served in this case, and the individual who had been sworn as an alternate (although he was not called upon to participate in the actual jury deliberations), were subpoenaed to attend the hearing. All of these individuals appeared before the trial court at the hearing except Ms. Robbie Whittaker,[1] who served on the twelve person jury. The record shows that after having been sworn as court witnesses each of them disclosed their race. Three members of the twelve person jury were black and the other nine and the alternate were white. The prosecutor and defense counsel stipulated that defendant is black; that the state used all its peremptory challenges to exclude black prospective jurors; and, that although the state had exhausted all its peremptory challenges prior to the selection of the third black juror, the state had unused peremptory challenges available at the time the first two blacks were selected as jurors.[2]
After having taken the matter under advisement, the trial court ruled that defendant had not proved that the state was *732 guilty of purposeful discrimination through the exercise of its peremptory challenges against blacks.[3] Defense counsel objected.
A peremptory challenge by the state shall not be based solely upon the race of the juror. La.C.Cr.P. art. 795(B). In Batson v. Kentucky, the United States Supreme Court held that the Equal Protection Clause prohibits the use of peremptory challenges to strike potential jurors of the defendant’s race solely on account of their race or the assumption that jurors of the defendant’s race will be unable to impartially consider the state’s case. The court further held that a defendant may establish a prima facie case of purposeful discrimination in the election of the petit jury exclusively on evidence of the state’s use of its peremptory challenges. In regard to the establishment of such a prima facie case, the Supreme Court stated the following:
To establish such a case, the defendant first must show that he is a member of a cognizable racial group, Castaneda v. Partida, supra, 430 U.S., [482] at 494, 97 S.Ct., [1272] at 1280 [51 L.Ed.2d 498], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant’s race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits “those to discriminate who are of a mind to discriminate.” Avery v. Georgia, supra, 345 U.S., [559] at 562, 73 S.Ct., [891] at 892 [97 L.Ed. 1244]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.
In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a “pattern” of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor’s questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor’s use of peremptory challenges creates a prima facie case of discrimination against black jurors.
Once the defendant makes a prima fa-cie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. * * * The trial court then will have the duty to determine if the defendant has established purposeful discrimination.21 ******
21 In a recent Title VII sex discrimination case, we stated that "a finding of intentional discrimination is a finding of fact” entitled to appropriate deference by a reviewing court. Anderson v. Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Since the trial judge’s findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference. Id., at 573, 105 S.Ct., at 1511.
106 S.Ct. at 1723-1724.
Batson’s application is clearly not limited to cases in which the state excludes all members of defendants race from a jury venire.
Immediately prior to ruling, the trial court herein stated that the prosecution in Batson had peremptorily challenged every black member of the jury venire, that the jury that served was composed only of white persons, and that defendant was black. The trial court further stated that in the present case defendant is black, and, the jury consisted of nine white persons and three black persons. The court then *733 noted its feeling at the outset was that the instant case did not come within the purview of Batson, but that it was mandated to make the required determination. The trial court then found that there had been no discrimination. In stating the reasons for its ruling, and after observing that the state had not exhausted its peremptory challenges at the time the first two blacks were selected as jurors, the trial court stated that “to meet the Batson situation, the state would have challenged these two jurors and not accepted them.”
We find that the trial court was legally wrong in its interpretation of Batson.
In State v. Thompson, 516 So.2d 349 (La.1987) the Louisiana Supreme Court held that a somewhat similar situation did not violate Batson. In Thompson, the State exercised all of its peremptory challenges against blacks and four of the twelve jurors on the panel were black. Thompson is distinguishable in that the State accepted four blacks to the jury panel before the State had exhausted its peremptory challenges and three additional blacks were accepted by the State but were challenged by the defendants. In addition, the State entered reasons into the record to explain its challenges.
In the present case the trial court might have had sufficient reasons for finding that the defendant has failed to prove a prima facie case of discrimination under Batson but the reasons given were legally incorrect. We remand to allow further proceedings in the trial court to determine reasons why the exercise of peremptory challenges herein against blacks does not violate Bat-son.
REVERSED AND REMANDED.
SHORTESS, J., concurs with reasons.

. The record reveals that Ms. Whittaker is white.

. Consistent with the stipulation of counsel, an examination of the transcript of the voir dire shows that, at the time the first black juror was selected, the state had exercised only two peremptory challenges to exclude prospective jurors. At the time the second black juror was selected, the state had used only one more of its peremptory challenges. The state then used its five remaining peremptory challenges. (The law in effect at the time, La.C.Cr.P. art. 799 as amended by Acts of 1983,495 § 1 provided for a total of eight peremptory challenges) to exclude prospective black jurors. Thereafter, the third black juror was selected, completing the twelve person jury. Prior to the selection of alternate juror, Mark Keltner, the state used the single peremptory challenge allowed to it by the trial court for use against prospective alternate jurors to exclude prospective juror Louise Tapps.

. The trial court conducted the Batson hearing on June 4, 1987. On June 8, 1987, the trial court made its ruling.