ARMSTRONG, Judge.
Defendant, Robert Harrison, was indicted by a grand jury’ for second-degree murder, a violation of La.R.S. 14:30.1. After two mistrials, one resulting from a hung jury, defendant was found guilty of manslaughter, a violation of La.R.S. 14:31. He was adjudged a habitual offender (third offense) and sentenced to forty-two years *253 at hard labor without benefit of probation, parole, or suspension of sentence. After an appeal[1] and remand, defendant was re-sentenced to twenty-one years at hard labor. Defendant now appeals for the second time, raising four assignments of error.
FACTS
Cynthia Kinney was the State’s main witness. Kinney testified that she was standing at the corner of St. Bernard Avenue and Villere Street at approximately 12:00 p.m. on June 27,1984. She saw the victim, Bill Davis, leave a grocery store with a fifth of Thunderbird wine and sit down on the steps of a residence at 1410 St. Bernard Avenue. She was situated across the street. She observed an automobile drive up, stop, and double park. The defendant got out of the automobile and walked up to the victim.
Kinney stated that the defendant was screaming at the victim and striking him in the area of the head and face. She saw the defendant start to back up and then shoot the victim. The defendant then got in the car and sped away. She went into shock and just walked away. She didn’t talk to the police until July 23, 1984.
The sole defense witness, Glenn Hall, knew the defendant and the victim. Hall testified that around noon on June 27, 1984 he was a passenger in an automobile being driven on St. Bernard Avenue in a river-bound ' direction. He saw the defendant and the victim standing up arguing. He said the victim had a knife and the defendant had a pistol. The victim was holding the knife as if he were going to stab the defendant. He was moving toward the defendant and the defendant was backing up towards the curb. Hall asked the driver to stop and the driver pulled around the corner. He heard a shot, got out of the car, and ran around the corner to St. Bernard Avenue. He saw the victim lying on the ground and the defendant leaving in the automobile. Hall went up and cradled the victim in his arms. He stated that the victim had a knife in his right hand but someone kicked it away. He heard a bystander say the name .“Bootsie.” Hall’s testimony indicates that he was under the impression that this “Bootsie” kicked the knife. Hall only saw someone’s foot kick the knife away. He said he knew a “Boot-sie” but he did not testify that he saw him at the scene. Hall left before police arrived because he had a criminal record and did not want to get involved. Kinney testified that the victim did not have a knife, or a gun, and that she would have seen it if he had.
Officer George Puipuro, Jr. was the first police officer to arrive on the scene. A crowd of approximately twenty people had gathered by the time he arrived. Officer Puipero did not see any dangerous weapons around the body.
Detective Melvin Winnins discovered a closed pocket knife in the gutter in front of 1406 St. Bernard Avenue. He said there was no indication that the knife had been involved in the altercation. Officer Aaron Blackwell actually collected the knife from the gutter. It was located amid street debris and trash. Detective Sam Gebbia testified that the knife appeared to have been there a while and had sedimentation on it. He requested that the knife be examined for fingerprints but was told by a technician that it was an unsuitable surface. Detective Gebbia also stated that no trace metal test was performed because the New Orleans Police Department doesn’t use the test anymore since the results are inconclusive.
Detective Gebbia testified that someone had information at the scene of the murder but didn’t wish to speak with police officers. Apparently, information was subsequently obtained from this person and police obtained an arrest warrant for the defendant. But, on July 3rd, before he could be arrested, defendant, accompanied by his attorney, turned himself in to police. This was twenty days before Kinney gave her statement to police on July 23rd.
Dr. Richard Tracey performed the autopsy on the victim. He stated that the cause *254 of death was a single gunshot wound to the chest. It was his .opinion that the left side of the victim’s body had been turned toward the weapon when the gun was discharged. He found traces of morphine in the victim’s blood. He also found evidence of a minor bruise on the right side of the victim’s head, in front of and above the ear.
After the defense rested, the State called Alvin “Bootsie” Joseph in rebuttal. Joseph testified that he was a supervisor with the Department of Streets. He claimed to have been working at the time of the shooting and was not in the area where the crime was committed. He further testified that he did not kick a knife from the deceased’s hands. He denied telling defense counsel’s investigator that he arrived on the scene to see the victim lying on the ground and a knife by the victim’s right hand. He admitted, however, speaking to someone named Gary who questioned him about, the incident. He also admitted knowing Glenn Hall from around the neighborhood. Joseph said that if there had been a “Bootsie” who kicked the knife away, it wasn’t him. He also stated that he knew other persons with the nickname of “Bootsie”.
After the State’s rebuttal defense counsel attempted to call his investigator, Gary Eldridge, to “impeach” the testimony of Alvin “Bootsie” Joseph. The State objected arguing that the defense was attempting to rebut the State’s rebuttal which is not allowed. The trial court denied the defense request but allowed Eldridge’s testimony in as a proffer. Eldridge testified that after he left messages at a residence where Alvin “Bootsie” Joseph was thought to live, someone named “Bootsie” telephoned him. This “Bootsie” told him that he had been at the scene of the shooting and had seen a knife very close to the victim’s hand. He also told Eldridge that there was no way he was going to appear in court or be involved in any way.
After Alvin “Bootsie” Joseph testified a juror notified the trial judge that she knew this man as a former neighbor. Their mothers were also friends. She said, however, that she was not in “Bootsie’s” age group and had never been in his residence nor he in hers. She had known him for approximately ten years. In response to direct questioning by the trial judge the juror stated that her acquaintance with “Bootsie” would not influence her in any way in considering the testimony presented in the case. Counsel for defendant requested that the juror be dismissed or that a mistrial be declared. The trial court denied defendant’s request and motion, satisfied that the juror would remain unbiased, fair, and impartial.
Based upon the evidence presented the jury found defendant guilty of manslaughter, a responsive verdict to the offense of second-degree murder for which he was being tried.

Assignment of Error No. 1

By his first assignment of error defendant claims that the trial court erred in refusing to allow in evidence the testimony of Gary Eldridge to impeach the State’s rebuttal witness, Alvin “Bootsie” Joseph.
The controlling law, we feel, is set forth in La.R.S. 15:282 which states:
“The prosecution has the right to rebut the evidence adduced by the defendant, but the defendant is without right to rebut the prosecution’s rebuttal.”
In the case at bar the State offered the testimony of Ms. Kinney who testified that at the time of the shooting the victim did not have a knife or gun in his hand. The defense introduced the testimony of Glenn Hall who stated that there had been a knife near the hand of the victim and that an unknown person kicked it away. The only clue that Hall had to the identity of that person was the utterance of the name “Bootsie” by someone in the crowd. In rebuttal the State introduced the testimony of a man whose nickname was “Bootsie,” who testified that he had not been at the scene of the crime and had not kicked a knife away from the victim’s hand. In its attempt to call Gary Eldridge as a witness, the defense was trying to rebut the State’s rebuttal which is clearly prohibited by La. R.S. 15:282.
*255 Rebuttal evidence is that which is offered to explain, repel, counteract, or disprove facts given in evidence by an adverse party. State v. Huizar, 414 So.2d 741 (La.1982). Defendant claims he was offering the testimony of Eldridge to impeach “Bootsie”, a right given each side under La.R.S. 15:486. In other words, the hearsay testimony of “Bootsie” as stated to Eldridge was not being offered for the truth of the matter asserted. We reject this argument and find that the effect of Eldridge’s testimony would have been to repel and counteract facts related by “Bootsie” and was therefore rebuttal evidence.

Assignment of Error No. 2

Defendant next contends that the trial court erred in refusing to allow him to impeach Ms. Kinney’s testimony by cross-examining her about several convictions for violations of municipal ordinances. The defense was able, however, to impeach her by bringing out that she had been convicted in state court of carrying a concealed weapon and resisting arrest. La.R.S. 15:495 allows a party to impeach the credibility of a witness by introducing evidence of a conviction for a “crime.” La.R.S. 14:7 (Article 7 of the Louisiana Criminal Code) defines a crime as “that conduct which is defined as criminal in this Code, or in other acts of the legislature, or in the constitution of this state.” The Reporter’s Comment to this statute states that this definition was “intended to exclude from the designation ‘crime’ all offenders denounced in municipal ordinances.” In State v. Ramos, 390 So.2d 1262 (La.1980), the Louisiana Supreme Court held that a municipal conviction is not a crime under La.R.S. 15:495.
Defendant cites La.C.Cr.P. art. 933 which defines a misdemeanor as an offense which “includes the violation of an ordinance providing a penal sanction.” Since Ms. Kinney’s municipal convictions carried penal sanctions they are misdemeanors. La.R.S. 14:2 defines a misdemeanor as “any crime other than a felony.” Therefore, defendant argues, Ms. Kinney’s convictions were crimes susceptible for use as impeachment evidence. We disagree and will follow the holding of the Louisiana Supreme Court in State v. Ramos, supra, supported by the definition of crime in La.R.S. 14:7 and the Reporter’s Comment thereto.

Assignment of Error No. 3

Defendant next contends that the trial court erred in failing to remove the juror who, after seeing Alvin “Bootsie” Joseph testify, informed the court that she knew him. Also cited as error is the trial court’s denial of defendant’s motion for a mistrial based on this fact.
The juror testified that she had not recognized the witnesses’ name when the list of witnesses was read to the prospective jurors during voir dire. Apparently, the nickname of “Bootsie” was not read. Therefore she did not respond when asked if she knew any of the witnesses.
In State v. Langendorfer, 389 So.2d 1271 (La.1980) a juror realized during a rape trial that she had taught the rape victim in school. The defendant motioned for a mistrial which was denied by the trial court. The Louisiana Supreme Court upheld the trial court’s action because the juror did not intentionally mislead the defense and the questioning by the trial court showed that she could serve as an unbiased, fair, and impartial juror.
In the case at bar the juror did not intentionally mislead the defense and questioning by the trial court showed that she could serve as an unbiased, fair, and impartial juror. Accordingly, we find no error with the trial court’s refusal to remove the juror or to declare a mistrial.

Assignment of Error No. 4

Defendant also filed a “pro se” brief detailing a fourth assignment of error. In an unpublished opinion[2] this court vacated the original forty-two year sentence imposed on defendant because the record did not reflect that his motion for a new trial had been ruled on. We remanded *256 the case to the trial court for consideration of that motion.
Our decision vacating and remanding was handed down on October 7, 1987. On October 20, 1987 the trial court set the matter for hearing on the motion for a new trial. On October 27, 1987 the trial court denied the defendant’s motion for a new trial. The court minutes reflect that the defendant waived the legal delay for sentencing provided by La.C.Cr.P. art. 873 and was re-sentenced to serve twenty-one years in the custody of the Department of Corrections (hard labor) with credit for time served.
Defendant now claims that the trial court was divested of the power to re-sentence by virtue of the delay between his conviction on November 8, 1986 and his re-sentencing on October 27, 1987. Defendant cites La.C.Cr.P. art. 874 which states:
Sentence shall be imposed without unreasonable delay. If a defendant claims that the sentence has been unreasonably delayed, he may invoke the supervisory jurisdiction of the supreme court.
We find no merit to defendant’s argument. This article cannot be construed to divest the trial court of its power to re-sentence the defendant under the circumstances of this case.
For the foregoing reasons we affirm the conviction and sentence of the defendant.
AFFIRMED.

. State v. Robert Harrison, 513 So.2d 1239 (La. App. 4th Cir., 1987).

. See footnote 1.