741 So.2d 797 (1999)
STATE of Louisiana
v.
John Edwin WHIDDON, Defendant-Appellant.
No. CR99-1.
Court of Appeal of Louisiana, Third Circuit.
June 2, 1999.
*798 David Wayne Burton, Richard Alan Morton, De Ridder, for State of La.
*799 Edward K. Bauman, Abita Springs, for John Edwin Whiddon.
BEFORE: WOODARD, AMY, and SULLIVAN, Judges.
WOODARD, Judge.
The Defendant, John Edwin Whiddon, was charged by bill of information with driving while intoxicated, third offense, in violation of La.R.S. 14:98. On December 3, 1997, he waived the formal reading of the bill of information and entered a plea of not guilty. On August 14, 1998, he withdrew his former plea of not guilty and entered a plea of guilty to the charge of third offense of driving while intoxicated (D.W.I.). Following a sentencing hearing held on October 26, 1998 and on October 29, 1998, he was sentenced to serve two years in the Beauregard Parish Jail. One year of the sentence was suspended, and he was placed on eighteen months supervised probation. As special conditions of his probation, he was ordered not to consume any alcoholic beverages; use any drugs, not prescribed by a licensed United States physician; not to operate a motor vehicle during the entire time of probation; to submit to random alcohol and drug testing or screening at the discretion of the probation officer at his expense; not to have a vehicle titled in his name or in his possession or under his control during the term of this sentence or his probation; to surrender his driver's license to the Department of Public Safety; and not to have or apply for a driver's license during the entire term of his jail sentence and probation period. Upon release from jail, he was ordered to attend at least one Alcoholics Anonymous meeting per week during the entire term of his probation and to pay a fine in the amount of $1,000.00, plus court costs. A motion to reconsider sentence was filed on the Defendant's behalf on November 3, 1998, which was denied the same day. He now appeals.

FACTS
In the early morning hours of October 18, 1997, while Officer Shane Fruge was on patrol, he observed a vehicle traveling at a high rate of speed. The radar confirmed that the vehicle was traveling fifty-seven miles per hour in a thirty-five mile per hour zone. After the officer turned his vehicle around, he noticed that the speeding vehicle had stopped in the middle of the road, just before an intersection, in an area where there were no street lights. The officer activated his emergency lights and positioned his vehicle behind the stopped vehicle. Officer Fruge observed the Defendant exit the vehicle and put his arm over his face and hold onto the driver's side door. The officer asked him why he had stopped in the middle of the road. He told the officer that he thought his distributor went out on his truck. While he was looking for his driver's license, proof of insurance, and registration, the officer noticed that he was swaying, losing his balance, had red, watery eyes, and an extreme odor of alcohol on his breath. When the officer asked him if he had been drinking, he admitted that he had consumed six beers at a bar in Leesville and six beers from an ice chest in the back of his truck. The officer asked him if he would perform a field sobriety test. He agreed. The tests were performed at the DeRidder Police Station because the area of the stop was dark and the officer did not have another officer to assist him for safety purposes. As a result of his performance on the field sobriety tests and his condition, he was placed under arrest for driving while intoxicated. A chemical test, in which he blew into the Intoxilizer Alcohol Analyzer, was also conducted. The reading was .151g%.

ASSIGNMENTS OF ERROR
The Defendant asserts that (1) the trial court erred in accepting defendant's plea of guilty to third offense DWI and that (2) the sentence imposed was cruel, unusual and excessive.

*800 LAW

ERRORS PATENT
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, there is one.
First, this court finds that the trial court did not personally inform the Defendant of the nature of the charge to which he was pleading. La.Code Crim.P. art. 556.1(A)(1), which became effective August 15, 1997, provides as follows:
A. In any criminal case, the court shall not accept a plea of guilty or nolo contendere, without first addressing the defendant personally in open court and informing him of, and determining that he understands, all of the following:
(1) The nature of the charge to which the plea was offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.
(Emphasis added). At the beginning of the Boykin proceeding, the District Attorney stated that the Defendant was charged with "the single felony offense of driving while intoxicated, third offense." Later, the trial court informed him that he was charged with "DWI third offense." We find this advice sufficient since driving while intoxicated is fairly straightforward. On the other hand, the trial court did not read the elements of the offense, and it did not give any explanation regarding the prior offenses element. For this reason, this court finds that the trial court did not satisfy the requirements of article 556.1(A)(1). Nevertheless, "since this requirement is a statutory requirement, rather than a constitutional requirement (as is the requirement that the trial court inform the Defendant of the three Boykin rights), and the Defendant does not allege any misunderstanding as to the nature of the charges to which he pled," nor is there any indication from the Boykin analysis, which follows, that his plea was involuntary. Accordingly, we find the error harmless. See State v. Longnon, 98-551, p. 7 (La.App. 3 Cir. 10/28/98), 720 So.2d 825, 829. But see State v. Chisley 98-169 (La.App. 5 Cir. 7/28/98), 718 So.2d 537; and State v. Hill, 30,552 (La.App. 2 Cir. 5/13/98), 714 So.2d 814. The Defendant is challenging his guilty plea because the trial court failed to obtain a factual basis in support of the plea. However, La.Code Crim.P. art. 556.1's requirement that he be advised of the nature of the charge to which he is pleading is not a requirement that a factual basis be obtained in support of the plea. The comments to article 556.1 state that the article "... incorporates the essence of F.R.Cr.P. 11." In fact, the wording of article 556.1 is very similar to that in Rule 11. Like article 556.1, Rule 11 requires that the Defendant be advised of the nature of the charge. Explaining how this particular requirement of Rule 11 could be satisfied, the United States Fifth Circuit Court of Appeal stated:
For simple charges such as those in this case, a reading of the indictment, followed by an opportunity given the defendant to ask questions about it, will usually suffice. Charges of a more complex nature, incorporating esoteric terms or concepts unfamiliar to the lay mind, may require more explication. In the case of charges of extreme complexity, an explanation of the elements of the offense like that given the jury in its instructions may be required; this, of course, is the outer limit, for if an instruction informs a jury of the nature of the charge sufficiently for it to convict the defendant of it, surely it informs the defendant sufficiently for him to convict himself. We can do no more than commit these matters to the good judgment of the court, to its calculation of the relative difficulty of comprehension of the charges and of the defendant's sophistication and intelligence.
(Footnote omitted.) United States v. Dayton, 604 F.2d 931, 938 (5th Cir.1979), cert. denied, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). Likewise, article *801 556.1's requirement that the Defendant be informed of the nature of the charges to which he is pleading encompasses information regarding the elements of the crime and not a requirement that the trial court obtain a factual basis in support of the plea.

ASSIGNMENT OF ERROR NUMBER 1
As his first assignment of error, the Defendant contends that the trial court erred in accepting his plea of guilty to third offense D.W.I. He argues that a more detailed inquiry into the waiver of his constitutional rights and the factual basis for his plea should have been conducted, as he was taking several types of medication for his psychiatric problems during the guilty plea hearing and he gave only "yes" and "no" answers during the hearing.
The Defendant failed to file a motion to withdraw his guilty plea in the lower court. However, in State v. West, 97-1638, p. 2-3 (La.App. 1 Cir. 5/15/98), 713 So.2d 693, 695, a defendant failed to file a motion to withdraw his guilty plea and the first circuit stated that "... [e]ven when a formal motion to withdraw a guilty plea is not filed, the Louisiana Supreme Court has held that a constitutionally infirm guilty plea may be set aside either by means of an appeal or post-conviction relief." This court, in State v. Jordan, 98-101 (La.App. 3 Cir. 6/3/98), 716 So.2d 36, addressed the validity of a defendant's guilty plea due to the constitutional nature of the Defendant's argument that his plea was not knowingly and intelligently entered, although the validity of the plea was raised for the first time on appeal because he did not file a motion to withdraw the guilty plea in the trial court. In accordance with Jordan, we will address the validity of his guilty plea even though he has not filed a motion to withdraw his guilty plea.
In State v. Dumas, 96-2748, p. 4 (La. App. 1 Cir. 11/7/97), 703 So.2d 112, 114, the first circuit stated:
In order for a misdemeanor guilty plea to be used as a basis for actual imprisonment, enhancement of actual imprisonment, or conversion of a subsequent misdemeanor into a felony, the trial judge must inform the defendant that by pleading guilty he waives: (a) his privilege against compulsory self-incrimination; (b) his right to trial and jury trial where applicable; and (c) his right to confront his accuser. The trial judge must also ascertain that the accused understands what the plea connotes and its consequences. State v. Jones, 404 So.2d 1192 (La.1981). It is the state's burden to show that the defendant knowingly and expressly waived his Boykin rights when entering this guilty plea. State v. Santiago, 416 So.2d 524 (La.1982). To meet this requirement, the state may rely on a contemporaneous record of the guilty plea proceedings, i.e., either the transcript of the plea or the minute entry. State v. Bland, 419 So.2d 1227 (La.1982).
The Defendant was represented by counsel, and the trial court informed him of all of his constitutional rights at his plea and Boykin examination. The court first ascertained the age and the extent of his formal education, as well as his employment status. Because he informed the trial judge that he was disabled, the judge inquired of him whether he was under the care of a physician and whether he was taking any medication regarding his condition. He informed the court that he was under the care of his psychiatrist and that he was taking Xanax, Prozac, and Imipramine. The judge asked him whether these drugs affected his ability to think and reason clearly in this matter. The Defendant replied in the negative.
The Defendant was then informed of the maximum and minimum sentences he could receive for the charge of third offense D.W.I. and the fact that at least six months of the sentence had to be served without benefit of probation, parole, or suspension of sentence. The court also *802 informed him that it had not committed to any sentence and that there had been no recommendation by the District Attorney's Office. Additionally, he was admonished that a subsequent conviction would expose him to a sentence of not less than ten, nor more than thirty years, and that because they were now dealing with a felony, the habitual offender law would also be applicable if he were convicted of any other type of felony, including a D.W.I., fourth offense. The trial judge explained the penalties provided under the habitual offender law.
Additionally, the judge informed him that he would give up certain constitutional rights in entering a guilty plea. Specifically, he was asked whether he understood that he was giving up his right to a jury trial, that he would go through the entire legal process with the representation of his attorney, and that the State would have to prove all of the elements of the crime with which he was charged. Likewise, he was informed that he would be giving up the right to subpoena, confront, and cross-examine witnesses, the right to remain silent, and the right against self-incrimination. Lastly, the trial judge asked him whether any threats or force had been used against him to induce the plea or whether any promises had been made to him. The court also inquired of him whether he had discussed the matter with his attorney and whether the plea was in fact free and voluntary.
The plea colloquy which took place between the trial judge was thorough, and the trial judge adequately explained his Boykin rights and what the waiver of these rights entailed if he pled guilty. It is also apparent that the trial judge was satisfied that he understood the nature and consequences of his plea. While he answered mostly "no, sir" and "yes, sir" to the trial judge's questions during the guilty plea examination, it is also apparent from the transcript that the trial judge asked him questions about his age, educational background, employment history, medical treatment, and medications, and that the Defendant was able to expound upon and give explanations regarding these questions without any confusion. The trial judge also adequately explained to him the penalties he would be subjecting himself to by pleading guilty, including a discussion about the habitual offender law, and the penalty he would be subjecting himself to if he were convicted of a fourth offense DWI.
The Defendant also contends that a factual basis for his plea should have been conducted. In State v. McCullough, 615 So.2d 26, 28 (La.App. 3 Cir.1993), this court stated:
When a guilty plea is otherwise voluntary, there is no necessity to ascertain a factual basis for the plea unless the accused protests his guilt or for some other reason the trial court is put on notice that there is a need for such inquiry. In that event, due process requires a judicial finding of a significant factual basis for the Defendant's plea. [North Carolina v.] Alford, supra [400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)]; [State v.] Linear, supra [600 So.2d 113 (La.App. 2 Cir.1992)]. However, the absence of a factual basis when entering a guilty plea does not render the plea constitutionally infirm, if the plea is determined to be made knowingly and intelligently. State v. Perry, 515 So.2d 654 (La.App. 3d Cir.1987).
While the record is devoid of a factual basis, there was nothing in the record which would have put the trial judge on notice that there was a need for such an inquiry, as the evidence was sufficient to demonstrate that his plea was made knowingly and intelligently, thereby making a factual basis unnecessary.
Therefore, the Defendant's assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 2
As his second assignment of error, he contends that the sentence imposed by the trial court was cruel, unusual, and excessive. *803 His appellate counsel specifically argues that his sentence was excessive in light of the fact that he is under the care of a psychiatrist and is on several different medications for his medical condition, including Xanax, Prozac, and Imipramine. He has been diagnosed with Panic Disorder and Generalized Anxiety Disorder, and it appears that the loss of his girlfriend and their child has triggered his psychiatric problems. Additionally, his mother and psychiatrist expressed to the court their concerns about his possibly inflicting harm upon himself if he is incarcerated.
The Defendant was sentenced to serve two years in the Beauregard Parish Jail, with the second year being suspended, and was placed on eighteen months supervised probation, subject to several special conditions. Additionally, and in accordance with La.R.S. 14:98(D)(2)(a), the trial judge ordered that the vehicle he was driving at the time he was arrested be seized and sold under the same conditions as executions of writs of seizure and sale as provided in Book V, Title II, Chapter 4 of the Louisiana Code of Civil Procedure, with the proceeds of the sale to be first used to pay court costs and towing and storage costs; the remainder to be forwarded to the Council on Automobile Insurance Rates and Enforcement for its use in studying other ways to reduce drunk driving and insurance rates.
The penalty range for third offense driving while intoxicated is provided by La. R.S. 14:98(D)(1), which states as follows:
D. (1) On a conviction of a third offense, notwithstanding any other provision of law to the contrary and regardless of whether the offense occurred before or after an earlier conviction, the offender shall be imprisoned with or without hard labor for not less than one year nor more than five years, and shall be fined two thousand dollars. At least six months of the sentence of imprisonment imposed shall be without benefit of probation, parole, or suspension of sentence. If a portion of the sentence is imposed with benefit of probation, parole, or suspension of sentence, the court shall require the offender to participate in a court-approved substance abuse program and/or participate in a court-approved driver improvement program.
(2)(a) In addition, the court shall order that the vehicle being driven by the offender at the time of the offense shall be seized and impounded, and sold at auction in the same manner and under the same conditions as executions of writ of seizures and sale as provided in Book V, Title II, Chapter 4 of the Code of Civil Procedure.
(b) The vehicle shall be exempt from sale if it was stolen, or if the driver of the vehicle at the time of the violation was not the owner and the owner did not know that the driver was operating the vehicle while intoxicated. If this exemption is applicable, the vehicle shall not be released from impoundment until such time as towing and storage fees have been paid.
(c) In addition, the vehicle shall be exempt from sale if all towing and storage fees are paid by a valid lienholder.
(d) The proceeds of the sale shall first be used to pay court costs and towing and storage costs, and the remainder shall be forwarded to the Council on Automobile Insurance Rates and Enforcement for its use in studying other ways to reduce drunk driving and insurance rates.
Therefore, the sentencing range for D.W.I., third offense, is a maximum of five years with or without hard labor and a minimum of one year with or without hard labor and a fine of $2,000.00. At least six months of the sentence of imprisonment shall be without benefit of probation, parole, or suspension of sentence. In the case sub judice, the Defendant's sentence is within the lower range provided by the statute.
*804 In articulating his reasons for sentencing, the trial judge took into consideration that he was thirty years old and that he acknowledged the fact that he had been arrested for D.W.I. at least five times and convicted of at least two prior D.W.I. charges. The trial judge also noted that seven months after his arrest for the present charge, he was arrested in Vernon Parish and charged with D.W.I., which was still pending at the time of sentencing. The trial judge also considered the report of his psychiatrist, Dr. Murphy, who, along with the Defendant's family, expressed concern that he might harm himself if imprisoned. Dr. Murphy also confirmed that the Defendant has received extensive psychological and psychiatric treatment. However, the trial judge felt that he "must consider the public safety and the danger of serious harm to the traveling public and the pedestrians along the streets and highways of Beauregard Parish." Although he sympathized with the tragedies which the Defendant has endured, he felt that prior probated sentences had little effect upon him and that if he were allowed to continue operating motor vehicles, his actions would constitute a real threat to the public. At the sentencing, the trial judge stated that, "If you are not incarcerated, no doubt you will continue driving while intoxicated and eventually you will probably be the cause of an accident that results in serious injury or even a fatality."
The trial judge's reasons for sentencing adequately reflect that he considered both aggravating and mitigating factors when he sentenced him and the record adequately supports the sentence imposed upon him. The sentence is lenient when compared to the maximum sentence allowed by law, and it is evident from the information before this court that he has not learned anything from his past experiences and many second chances. While he suffers from a psychiatric condition, the trial judge, in sentencing him, did an able job of balancing his condition with the future safety of the citizens of his parish. Additionally, a review of the record on appeal shows that he has received prior benefits and consideration from the State in being allowed to tender pleas to lesser grades of D.W.I. than those he was charged with in the bills of information.
Therefore, we uphold his sentence, and this assignment of error is without merit.

CONCLUSION
The Defendant's guilty plea to third offense D.W.I. is affirmed, as he was adequately informed of his Boykin rights and a factual basis for the plea was unnecessary as the plea was made knowingly and intelligently. Additionally, his sentence for conviction of a third offense D.W.I. is not excessive and is affirmed.
AFFIRMED.
AMY, J., CONCURS.