# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**22-806**

**STATE OF LOUISIANA**

**VERSUS**

**JUAN DEDILOS VILLARREAL GAMBOA**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 19468-18
HONORABLE DAVID A. RITCHIE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## VAN H. KYZAR
### JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Van H. Kyzar, and Sharon Darville Wilson, Judges.

**AFFIRMED;
REMANDED WITH INSTRUCTIONS.**

**Douglas Lee Harville**
**Louisiana Appellate Project**
**P. O. Box 52988**
**Shreveport, LA 71135-2988**
**(318) 222-1700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Juan Dedilos Villarreal Gamboa**

**Stephen C. Dwight**
**District Attorney**
**John Eric Turner**
**Assistant District Attorney**
**Fourteenth Judicial District**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, LA 70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**KYZAR, Judge.**

Defendant, after pleading guilty to the charge of aggravated flight from an officer, appeals his conviction and five-year sentence, which was ordered to run consecutively with a conviction and five-year sentence imposed under a different document number. For the reasons set forth herein, we affirm the conviction and sentence and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

On October 26, 2018, Defendant, Juan Dedilos Villarreal Gamboa, was charged by bill of information in docket number 19468-18 with the offense of aggravated flight from an officer, in violation of La.R.S. 14:108.1. The bill alleged that Defendant:

> [O]n or about February 22, 2018, being the driver of a motor vehicle, did intentionally refuse to bring said vehicle to a stop knowing that he has been given a visual and audible signal to stop by a police officer, under circumstances wherein human life was endangered, when the officer has reasonable grounds to believe that the driver has committed an offense[.]

Defendant was additionally charged under docket number 20757-18 with aggravated flight from an officer and under docket number 2786-11 with a probation violation for a prior felony offense.

Defendant is not a citizen of the United States. He initially pled not guilty to the charges on November 7, 2018, but on March 27, 2019, he withdrew his not guilty pleas and entered pleas of guilty to all three charges. There was no agreed upon sentence as to any of the charges. After Defendant pled guilty, the trial court sentenced him to serve five years of imprisonment at hard labor on each charge, with the sentence imposed under docket number 19468-18 to run consecutively with that imposed under docket number 20757-18 and concurrently to that imposed under

docket number 3786-11.[1]  On June 13, 2019, Defendant filed a motion to reconsider his sentences in all docket numbers.  On August 12, 2019, the trial court denied the motion as untimely but also found that the sentences imposed were appropriate.

On April 9, 2021, Defendant filed an application for post-conviction relief on the grounds of ineffective assistance of counsel, claiming that his counsel failed to adequately advise him of the impact his guilty pleas would have on his immigration status as required by *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473 (2010).[2]  On April 1, 2022, the State filed procedural objections to the application for post-conviction relief, and, on that same date, the trial court stayed Defendant's application pending this appeal.

The trial court granted Defendant's motion for appeal "as it relates to his sentence, but not his conviction" because Defendant signed a plea form in which he waived his right to appeal from a verdict of guilty.  Regardless of this finding, the only assignment of error raised on appeal by Defendant relates to his guilty plea.[3]

---

[1] Defendant pled guilty in docket number 20757-18, and his probation was revoked in docket number 3786-11.  Defendant filed appeals in both lower court docket numbers.  The appeal in 20757-18 was lodged with this court as 22-807 and is considered in a separate opinion.  However, the appeal lodged in 3786-11 was dismissed because the judgment at issue was non-appealable.  *State v. Gamboa*, 22-805 (La.App. 3 Cir. 3/1/23) (unpublished opinion) (2023 WL 2293608).

[2] *Padilla* dealt exclusively with a claim of ineffectiveness of counsel.  Padilla asserted that his counsel was ineffective for failing to advise him, an immigrant, that his felony guilty plea could or would result in his deportation.  The Supreme Court granted certiorari "to decide whether, as a matter of federal law, Padilla's counsel had an obligation to advise him that the offense to which he was pleading guilty would result in his removal from the country." *Padilla*, 559 U.S. at 360.  The Supreme Court held that accepting his allegations as true, Padilla sufficiently alleged constitutional deficiency to satisfy the first prong of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984).  However, the Court went on to state that whether Padilla was entitled to relief on his claim would depend on whether he could satisfy *Strickland*'s second prong, prejudice, a matter it left to the lower state court to consider in the first instance.

[3] The plea form signed by Defendant stated that he waived the right to appeal from a verdict of guilty, and the trial court informed Defendant that he waived the "right to appeal a verdict of guilty if you were convicted by a jury, but when you plead guilty you waive all those rights."  The language used in the form and by the trial court did not exclude review of the voluntariness of Defendant's plea, which is the issue raised in this appeal.  However, the trial court merely granted Defendant the right to appeal his sentence.  In *State v. Guilbeau*, 11-7 (La.App. 3 Cir. 6/22/11), 71 So.3d 1010, this court noted that the defendant's motion to appeal prayed only for an appeal from

2

On appeal, Defendant raises the following assignment of error:

The record on appeal does not establish that Mr. Gamboa was advised about the impact his guilty pleas could have on his immigration status as required by *Padilla*. Did the Trial Court err when it found that Mr. Gamboa's plea was knowing and voluntary?

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find that there is one error patent. On March 27, 2019, the trial court sentenced Defendant to five years imprisonment at hard labor in docket number 19468-18, which sentence was to run consecutively with another sentence of five years imprisonment at hard labor in docket number 20757-18. According to the transcript of the sentencing, the trial court specified that the sentence of five years imprisonment applied to "each of those aggravated flights from an officer." However, the minutes of sentencing state the following, in pertinent part:

For oral reasons assigned, as to [docket numbers] 19468-18 and 20757-18, the Court sentences the defendant to serve five (5) years in the custody of the Louisiana Department of Corrections, with credit for any time served from the arrest date of October 17, 2018[,] in accordance with Article 880 of the Code of Criminal Procedure, to run consecutively.

Although the minutes mention the docket numbers for both of the aggravated-flight convictions and state "to run consecutively[,]" the minutes otherwise indicate that a single five-year sentence was imposed. "Where the transcript and the minutes conflict, the transcript prevails." *State v. Williams*, 15-498, p. 3 (La.App. 3 Cir. 12/9/15), 181 So.3d 857, 861, *writ denied*, 16-26 (La. 1/13/17), 215 So.3d 242.

---

the order denying his motion to reconsider his sentence, but the language of the order granting the appeal was general and not restricted to only the order denying the motion for reconsideration. This court stated: "Arguably, issues unrelated to sentencing are thus not properly before this court. Nevertheless, because appeals are favored, we will address Defendant's second assignment of error[,]" which involved the factual basis for the defendant's plea. *Id.* at 1017. Following our rationale in *Guilbeau*, we will consider Defendant's assignment of error.

3

Accordingly, the trial court is ordered to correct the minutes of sentencing to accurately reflect that it imposed the five-year sentence on each count.

## OPINION

Defendant asserts that the trial court erred in accepting his guilty plea without first advising him of the potential effect his convictions could have on his immigration status. Thus, he argues that the trial court erred in finding that he knowingly, intelligently, and voluntarily entered his guilty plea.

Initially, we consider the State's argument that Defendant failed to raise this issue before the trial court, having failed to file a motion to withdraw his guilty plea or even argue the issue at any time before or during sentencing. "The Courts of Appeal shall review issues that were submitted to the trial court and that are contained in specifications or assignments of error, unless the interest of justice requires otherwise." Uniform Rules—Courts of Appeal, Rule 1–3. In *State v. Williams*, 02-898, 02-1030, p. 7 (La. 10/15/02), 830 So.2d 984, 988, the supreme court stated: "The general rule established by this Court is that issues not submitted to the trial court for decision will not be considered by the appellate court on appeal."

Louisiana Code of Criminal Procedure Article 559(A) provides that "[u]pon motion of the defendant and after a contradictory hearing, which may be waived by the state in writing, the court may permit a plea of guilty to be withdrawn at any time before sentence." Further, on the filing of a proper motion a defendant can be permitted to withdraw his plea even after sentencing. *State v. Lewis*, 421 So.2d 224 (La.1982). No such motions were filed here.

We note at the outset that appeals are favored, and there is a constitutional right to appeal in Louisiana. La.Const. art. 1, § 19; *State v. Douglas*, 22-752 (La.App. 3 Cir. 2/23/23), 358 So.3d 580. Louisiana Code of Criminal Procedure Article 912.1(B)(1) provides: "The defendant may appeal to the court of appeal

4

from a judgment in a criminal case triable by jury," and aggravated flight from an officer is triable by a jury. La.R.S. 14:108.1; La.Code Crim.P. art. 782(A).

While recognizing the general rule expressed in *Williams*, this court and other appellate courts have nonetheless addressed, out of an abundance of caution, constitutional issues such as those regarding the habitual offender statute when raised for the first time on appeal. *State v. McKithern*, 11-1402 (La.App. 3 Cir. 5/2/12), 93 So.3d 684, *writ denied*, 12-1653 (La. 3/1/13), 108 So.3d 782; *State v. Myles*, 04-434 (La.App. 5 Cir. 10/12/04), 887 So.2d 118. This is in line with previous decisions of this court to consider claims concerning the constitutionality of a guilty plea on appeal, despite the issue not having been raised before the trial court.

In *State v. Casson*, 07-1081, pp. 1–2 (La.App. 3 Cir. 2/4/09), 2 So.3d 1246, 1247–48 (*on reh'g*) (alterations in original), *writ denied*, 09-501 (La. 11/20/09), 25 So.3d 785, this court stated:

> We granted rehearing to consider the correctness of our original opinion and conclusion therein. We now vacate our original judgment and find we erred in previously holding that "[a] new ground for withdrawal of a guilty plea, even if meritorious, may not be raised for the first time on appeal."
>
> In *State v. Dixon*, 449 So.2d 463, 464 (La.1984), the Louisiana Supreme Court stated it "has consistently permitted a constitutionally infirm guilty plea to be withdrawn after sentencing by way of appeal or post conviction relief. *State v. Hayes*, 423 So.2d 1111 (La.1982), and cases cited therein." In *State v. Galliano*, 396 So.2d 1288, 1289 (La.1981), the supreme court held:
>
>> Code of Criminal Procedure art. 559 provides, in pertinent part, that "(t)he court may permit a plea of guilty to be withdrawn at any time before sentence." In this case, however, the court permitted withdrawal of the plea after sentencing. Thus, it is first necessary to discuss whether article 559 stood as an absolute bar to the judge's actions.
>>
>> *Notwithstanding the language of article 559, this Court has stated that a constitutionally infirm guilty plea may be withdrawn after sentence is imposed in the same*

5

> *manner that any illegal sentence may be attacked, namely,*
> *appeal, or writs of certiorari or habeas corpus.* C.Cr.P.
> art. 882; *State v. Banks*, 383 So.2d 1009 (La.1980); *State*
> *ex rel. Clark v. Marullo*, 352 So.2d 223 (La.1977). The
> reason for this exception in the context of guilty pleas was
> to insure that no person was deprived of his liberty merely
> because he failed to challenge the voluntariness of his plea
> within the limited period of time between the plea and
> sentencing.

(Emphasis added; footnote omitted.)

In *State v. Whiddon*, 99-1 (La.App. 3 Cir. 06/02/99), 741 So.2d 797, 801, this court acknowledged that a constitutionally infirm guilty plea may be set aside by either an appeal or post-conviction relief:

> The Defendant failed to file a motion to withdraw
> his guilty plea in the lower court. However, in *State v.*
> *West*, 97–1638, p. 2–3 (La.App. 1 Cir. 5/15/98), 713 So.2d
> 693, 695, a defendant failed to file a motion to withdraw
> his guilty plea and the first circuit stated that ". . . [e]ven
> when a formal motion to withdraw a guilty plea is not
> filed, the Louisiana Supreme Court has held that a
> constitutionally infirm guilty plea may be set aside either
> by means of an appeal or post-conviction relief." This
> court, in *State v. Jordan*, 98–101 (La.App. 3 Cir. 6/3/98),
> 716 So.2d 36, addressed the validity of a defendant's
> guilty plea due to the constitutional nature of the
> Defendant's argument that his plea was not knowingly and
> intelligently entered, although the validity of the plea was
> raised for the first time on appeal because he did not file a
> motion to withdraw the guilty plea in the trial court. In
> accordance with *Jordan*, we will address the validity of his
> guilty plea even though he has not filed a motion to
> withdraw his guilty plea.

Based on *Casson*, Defendant was not required to file a motion to withdraw his guilty plea before raising the claim at issue on appeal, and his claim as to the constitutionality of the plea will be considered.

We next consider the State's argument that Defendant's claim lacks merit and that the conviction should be affirmed by mere application of La.Code Crim.P. art. 556.1(A)(5)(a)(i). Louisiana Code of Criminal Procedure Article 556.1 sets out the duties for the trial court and defense counsel during a plea of guilty or of no contest in felony cases relative to immigration status and states, in pertinent part, as follows:

6

A.  In a felony case, the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and informing him of, and determining that he understands, all of the following:

. . . .

(5) That if he pleads guilty or nolo contendere, he may be subject to additional consequences or waivers of constitutional rights in the following areas as a result of his plea to be informed as follows:

(a) Defense counsel or the court shall inform him regarding:

(i) Potential deportation, for a person who is not a United States citizen.

However, Article 556.1(A)(5)(c) explicitly provides that the "[f]ailure to adhere to the provisions of Subsubparagraphs (a) and (b) of this Subparagraph shall not be considered an error, defect, irregularity, or variance affecting the substantial rights of the accused and does not constitute grounds for reversal pursuant to Article 921." If applicable, this provision would apparently result in a denial of Defendant's claim. However, because Article 556.1(A)(5), which was added by 2021 La. Acts No. 271, §1, became effective on August 1, 2021, we find that it is inapplicable in this instance inasmuch as Defendant's plea was entered on March 27, 2019.

This brings us squarely to the issue of whether Defendant's plea was constitutional; i.e., whether it was freely and voluntarily entered.  In *State v. Clause*, 22-545, p. 5 (La.App. 3 Cir. 1/25/23), 354 So.3d 1269, 1274–75 (quoting *State v. McGarr*, 52,641, 52,642, pp. 11-12 (La.App. 2 Cir. 4/10/19), 268 So.3d 1189, 1196–97), another panel of this court affirmed the trial court's denial of a defendant's motion to withdraw his guilty plea and focused on the requirements for the validity of the plea and the burden of proof required to set aside such plea:

> Under La. C. Cr. P. art. 556.1, a valid guilty plea must be a voluntary choice by the defendant and not the result of force or threats.  La. C. Cr. P. art. 556.1 also provides that prior to accepting a guilty plea, the court must personally inform the defendant of the nature of the

7

charge to which the plea is offered, any mandatory minimum penalty, and the maximum possible penalty. When the record establishes that an accused was informed of and waived his right to a trial by jury, to confront his accusers, and against self-incrimination, the burden shifts to the accused to prove that despite this record, his guilty plea was involuntary. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Cooper*, 52,408 (La. App. 2 Cir. 11/8/18), 261 So.3d 975; *State v. Martin*, [48,045 (La.App. 2 Cir. 5/15/13), 115 So.3d 750].

An express and knowing waiver of those rights must appear on the record, and an unequivocal showing of a free and voluntary waiver cannot be presumed. *Boykin, supra*; *State v. Johnson*, 51,430 (La. App. 2 Cir. 7/5/17), 224 So.3d 505; *State v. Kennedy*, 42,850 (La. App. 2 Cir. 1/9/08), 974 So.2d 203. A plea of guilty normally waives all nonjurisdictional defects in the proceedings prior to the plea, including insufficiency of the evidence. *State v. Crosby*, 338 So.2d 584 (La. 1976); *State v. Johnson, supra*; *State v. Stephan*, 38,612 (La. App. 2 Cir. 8/18/04), 880 So.2d 201. A validly entered guilty plea, or plea of *nolo contendere*, waives any right a defendant might have had to question the merits of the state's case and the factual basis underlying the conviction. *State v. Bourgeois*, 406 So.2d 550 (La. 1981); *State v. Cooper, supra*; *State v. Hardy*, 39,233 (La. App. 2 Cir. 1/26/05), 892 So.2d 710.

A guilty plea will further be found unconstitutionally infirm "when a defendant is induced to enter the plea by a plea bargain or what he justifiably believes was a plea bargain and that bargain is not kept." *State v. Heath*, 17-502, p. 3 (La.App. 5 Cir. 12/27/17), 236 So.3d 732, 735.

The trial court, in denying Defendant's motion to appeal the convictions and limiting the grounds for appeal to the issues related to sentencing, ruled that the plea was valid and constitutional, thus, Defendant waived all non-jurisdictional issues related to his conviction. The following colloquy appears in the transcript of the guilty plea:

**THE COURT:**

All right. We're going to go over your rights together.

8

You understand you have a right to a speedy and public jury trial, and during that trial you would have the right to have an attorney of your choice[,] and if you couldn't afford an attorney you'd have the right to have a court-appointed attorney without cost to you if you couldn't afford one, and also during that trial you'd have the right to confront and cross-examine the witnesses that the State would call to testify against you, meaning that you would have the right to see, hear, and ask questions of those witnesses that the State would call to testify.

You'd have the right to subpoena your own witnesses to appear and testify on your behalf even if they didn't want to be here.

You would have the right against self-incrimination, meaning that you would not have to testify against yourself or at all or put on any testimony or evidence at all without any of that being held against you.

You would have the right to be presumed innocent until and unless proven guilty beyond a reasonable doubt.

You would also have the right to appeal a verdict of guilty if you were convicted by a jury, but when you plead guilty you waive all those rights. Do you understand that?

**MR. GAMBOA:**

Yes, Your Honor.

**THE COURT:**

And is that what you want to do at this time?

**MR. GAMBOA:**

Yes, Your Honor.

The trial court further inquired into the voluntariness of Defendant's plea:

**THE COURT:**

All right. Has anybody threatened, pressured, or forced you to plead guilty here today?

**MR. GAMBOA:**

No, Your Honor.

Based upon the colloquy quoted and the entirety of the transcript, we find that Defendant was advised of all of his *Boykin*[4] rights—the nature of the charge to which the plea was offered, the maximum possible penalty, his rights to trial by jury and to confront his accusers, and his privilege against self-incrimination. The transcript further reveals that he verbally waived those rights. Moreover, Defendant does not allege that the trial court failed to adequately explain his *Boykin* rights and the effect that a waiver of those rights would entail. Thus, the burden shifted to Defendant to prove that despite this record, his guilty plea was involuntary. To determine whether he carried this burden, it is proper for us to look beyond the mere transcript of the guilty plea itself.

> Because a plea of guilty waives an accused's fundamental right to a jury trial, right to confront his accusers and privilege against self incrimination, due process requires as a prerequisite to its validity that the plea be a voluntary and intelligent relinquishment of known rights. *McCarthy v. United States*, [394 U.S. 459, 89 S.Ct. 1166 (1969)]. The record of the plea must show that the defendant was informed of these three basic rights and then knowingly and voluntarily waived them. *State v. LaFleur*, 391 So.2d 445 (La.1980).

> Since the plea colloquy is but an objective method of ascertaining and preserving an accused's state of mind, however, judicial inquiry need not focus solely upon the clarity of the words used. For this reason, a court, when called upon to do so through a recognized procedural vehicle, has the power, notwithstanding a record waiver of constitutional rights, to determine whether other factors present at the time of a guilty plea, **whether inside or outside the plea colloquy record**, were sufficient to render the plea involuntary or unintelligent. See *Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

> . . . .

> . . . In *Turner* [v. *United States*, 320 F.Supp. 1204 (E.D.La. 1970)], the judge ruled that the guilty plea was voluntary and intelligent after considering the objective evidence in the record as well as later testimony taken at an evidentiary hearing on the voluntariness issue. In [*State v.*] *MacDonald*[, 390 So.2d 1276 (La.1980),] and [*State v.*] *Langendorfer*[, 389 So.2d 1271 (La.1980)], this Court likewise looked beyond the record waiver of constitutional rights in order to determine

---

[4] *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709 (1969).

> voluntariness and intelligence from the totality of the record before it. In *MacDonald* this included a review of a plea bargain arrangement and in *Langendorfer* this included a review of testimony taken at the multiple offender hearing.

*State v. Galliano*, 396 So.2d 1288, 1290 (La.1981) (emphasis added).

In brief to this court, Defendant argues that he was not advised of the impact his plea would have on his immigration status as required by *Padilla*. He notes that in an affidavit submitted as part of the State's opposition to his PCR application, his trial counsel admitted: 1) he knew Defendant was not a United States citizen; 2) he could not remember if he spoke to Defendant about the impact the plea could have on Defendant's immigration status; and 3) it was his usual practice to inform such defendants of the potential consequences of their pleas. Moreover, Defendant argues that it is clear from his PCR application that he would not have pled guilty had he been adequately advised that such a plea would render him subject to removal from the United States. Thus, he argues that the record fails to establish that his plea was knowing and voluntary.

The record reflects that Defendant is not a United States citizen. When asked his full name by the trial court during the plea proceeding, Defendant informed it that he was born in Mexico, stating: "Birth certificate is from Mexico. So, it says my full name over there, but all my legal documents, like my green card, all that stuff, says Juan Gamboa."

Defendant's PCR application, which was filed two years after his plea, is pertinent to this assignment of error and is referenced by both Defendant and the State in their appellate briefs. In his pro-se PCR application, Defendant raised a claim of ineffective assistance of counsel, alleging that his counsel failed to inform him prior to his plea of the mandatory deportation laws under 8 U.S.C.A. §

11

$1227(a)(2)(B)(i).$[5] He claimed that he would not have pled guilty had he been properly informed. Defendant acknowledged that "he was aware of the connection between his criminal record and his immigration status, but he was not aware of the **automatic deportation elements**." (Emphasis added.) He further admitted that at the time of his arrest he explained to the officers that the reason he ran was because "his permanent resident card/immigration status had expired, and he was afraid of being deported[.]" Defendant alleged that he asked defense counsel to speak to the trial court about his immigration status because he feared being deported and leaving his five children behind. However, he claims that defense counsel only spoke to the judge about his children. Defendant's PCR application included an immigration detainer that was served on him on July 8, 2019.

Also relevant is an affidavit attached to the State's procedural objections and answer to Defendant's PCR application. In the affidavit, defense counsel stated:

> I was informed that [Defendant] was not a US Citizen, but had lived in the US since age four (4). He says I did not inform him that a conviction for the charges that he plead [sic] guilty to could result in his deportation. I have no notes in my file on that issue and I do not remember if I told him this or not. Over the years, I have represented several non-citizens, and make it my practice to inform them of the possibility of deportation. In this case, I cannot positively state that I informed [Defendant] of the possibility of deportation. I do point out that he has previously been convicted of Simple Burglary, and that alone could have resulted in deportation.

Defendant's assigned error is based on *Padilla*. Padilla, a native of Honduras, had served as a member of the United States Armed Forces during the Vietnam War and had been a lawful, permanent resident of the United States for more than forty

---

[5] This provision provides:

Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

12

years. He faced deportation after pleading guilty to the transportation of a large amount of marijuana in his tractor-trailer in the Commonwealth of Kentucky. The Supreme Court addressed Padilla's ineffective assistance of counsel claim and defined the scope of the duty to advise noncitizens about the consequences of guilty pleas, declaring:

> Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward . . ., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

*Padilla*, 559 U.S. at 369 (footnote omitted).

The Court continued:

> In sum, we have long recognized that the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel. *Hill* [*v. Lockhart*], 474 U.S. [52] at 57, 106 S.Ct. 366 [(1985)]; see also [*McMann v.*] *Richardson*, 397 U.S. [759] at 770–771, 90 S.Ct. 1441 [(1970)]. The severity of deportation—"the equivalent of banishment or exile," *Delgadillo v. Carmichael*, 332 U.S. 388, 390–391, 68 S.Ct. 10, 92 L.Ed. 17 (1947)—only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation.
>
> It is our responsibility under the Constitution to ensure that no criminal defendant—whether a citizen or not—is left to the "mercies of incompetent counsel." *Richardson*, 397 U.S., at 771, 90 S.Ct. 1441. To satisfy this responsibility, we now hold that counsel must inform her client whether his plea carries a risk of deportation. Our longstanding Sixth Amendment precedents, the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families living lawfully in this country demand no less.

*Id.* at 373–74 (footnote omitted).

Justice Scalia, with whom Justice Thomas joined, dissented, stating:

The concurrence's treatment of misadvice seems driven by concern about the voluntariness of Padilla's guilty plea. But that concern properly relates to the Due Process Clauses of the Fifth and Fourteenth Amendments, not to the Sixth Amendment. Padilla has not argued before us that his guilty plea was not knowing and voluntary. If that is, however, the true substance of his claim (and if he has properly preserved it) the state court can address it on remand.

*Id.* at 391 (citations omitted).

In *State v. Sewell*, 20-300, p. 4 (La. 12/11/20), 314 So.3d 811, 813 (per curiam) (footnote omitted), which Defendant cites in his brief, the Louisiana Supreme Court discussed *Padilla*, as follows:

A closer look at *Padilla* suggests it imposed a number of duties on defense attorneys, which are subsumed in the obligation to inform a client whether his plea carries a risk of removal. First, while not specifically addressed by *Padilla*, counsel must determine the immigration status of the noncitizen client, which may prove challenging given the several statuses possible under current law. Second, counsel must scrutinize the elements of the state crime in light of federal immigration law to identify the likelihood of removal following a guilty plea. Third, counsel must advise the client accordingly as to the risk of removal.

However, it is not clear that *Padilla* imposed a duty on defense counsel to determine whether his or her client is a noncitizen to begin with, such that failure to make this determination constitutes per se deficient performance. The majority in *Padilla* arguably proceeded on the supposition that a defense attorney is aware that his or her client is a noncitizen.

The supreme court went on to state:

We do not believe that the United States Supreme Court in *Padilla* imposed a duty on every defense attorney to investigate every client's citizenship status in all instances. Instead, the Supreme Court in *Padilla* answered the question of whether advice about removal consequences is within the reach of the Sixth Amendment at all. *See Chaidez v. United States*, 568 U.S. 342, 349, 133 S.Ct. 1103, 1108, 185 L.Ed.2d 149 (2013) ("*Padilla* considered a threshold question: Was advice about deportation 'categorically removed' from the scope of the Sixth Amendment right to counsel"). The Supreme Court in *Padilla* concluded: "*Strickland* applied to Padilla's claim." *Chaidez*, 568 U.S. at 353, 133 S.Ct. at 1110 (quoting *Padilla*, 559 U.S. at 366, 130 S.Ct. at 1482).

*Id.* at 814.

14

Defendant suggests *Padilla* established that a plea cannot be knowing and voluntary if a defendant is not counseled regarding the impact his plea may have on his immigration status. We disagree. The Supreme Court did not address the voluntariness of Padilla's plea. Rather, *Padilla* requires defense attorneys to inform noncitizen clients of the deportation risks associated with guilty pleas. The Supreme Court did not demand that such information be placed on the record at the time a guilty plea is entered, nor did it not apply the ruling in *Padilla* to judges or the prosecution. Likewise, the Louisiana Supreme Court did not address the voluntariness of the plea, noting that *Padilla* "answered the question of whether advice about removal consequences is within the reach of the Sixth Amendment at all." *Sewell*, 314 So.3d at 114.

Furthermore, Defendant cannot prove his plea was unknowing and involuntary inasmuch as both his brief and his PCR application acknowledge that he was aware that pleading guilty could impact his immigration status. The PCR application further indicated that Defendant's permanent resident card was expired at the time he fled from police, and he fled because he was afraid of being deported.

In his reply brief, Defendant alleges that he was unaware that his plea would subject him to automatic deportation from the United States. However, he has not set forth or discussed any law regarding deportation in the briefs filed in this court. Uniform Rules—Courts of Appeal, Rule 2–12.4(A)(9)(a).[6] As a result, Defendant has failed to prove that his plea to aggravated flight from an officer resulted in automatic deportation. We further note that Defendant pled guilty to simple burglary on April 15, 2011, and his probation for that offense was revoked on the same date

---

[6] Uniform Rules—Courts of Appeal, Rule 2–12.4(A)(9)(a) requires the appellant's argument in his brief to include "appellant's contentions, with reference to the specific page numbers of the record and citations to the authorities on which the appellant relies[.]"

15

he pled guilty to aggravated flight from an officer. Obviously, Defendant was not automatically deported following his April 15, 2011 guilty plea, even though simple burglary is a felony offense. Furthermore, Defendant has not addressed whether the basis for the deportation detainer attached to his PCR application was based on his simple burglary convictions as opposed to his convictions for aggravated flight from an officer. He fails to explain why he was not deported after his simple burglary plea in 2011, albeit he was initially given probation.

In his PCR application, Defendant indicated that he was subject to automatic removal in accordance with 8 U.S.C.A. § 1227(a)(2)(B)(i), which was the basis for Padilla's claim. However, that provision relates to controlled dangerous substances, and Defendant was convicted of aggravated flight from an officer. He makes no reference to any provision requiring automatic deportation for the offenses involved here. Thus, that provision is inapplicable to Defendant's claim.

Based on the entirety of the transcript and the record, including Defendant's PCR application and its attachments, we conclude that he entered a valid and constitutional plea of guilty. Thus, we find that Defendant has not met his burden of proving that his guilty plea was involuntary. Accordingly, Defendant's conviction is affirmed, and as he failed to argue the excessiveness of the sentence, his sentence is also affirmed.

### DECREE

The conviction and sentence imposed in docket numbers 19468-18 and 20757-18 are affirmed, and the matter is remanded for the trial court to correct the minutes of sentencing to accurately reflect that it imposed the five-year sentence on each count.

**AFFIRMED; REMANDED WITH INSTRUCTIONS.**

16